Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| MEDINA GROUP LLC<br><br>Parte Peticionaria<br><br>v.<br><br>GUAYNABO SOUTH CONSTRUCTION LLC<br><br>Parte Recurrida | TA2025CE00385 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.:<br>SJ2023CV11440<br><br>Sobre:<br>Cobro de Dinero (Ordinario y otros) |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de septiembre de 2025.

Comparece la parte peticionaria, Medina Group LLC (Medina o parte peticionaria), mediante recurso de *certiorari*, y solicita que revoquemos la *Orden* emitida y notificada el 8 de agosto de 2025 por el Tribunal de Primera Instancia, Sala de Bayamón (TPI). Mediante el referido dictamen, el TPI declaró No Ha Lugar la solicitud de reconsideración que presentó Medina respecto a una *Orden*[1] emitida por el foro recurrido. En la referida orden, el TPI eliminó las alegaciones de Medina, por su incumplimiento y tardanza en el descubrimiento de prueba.

Por los fundamentos que expondremos a continuación, expedimos y confirmamos la expedición del recurso de *certiorari*.

**I.**

El 11 de diciembre de 2023, Medina Group LLC (Medina o parte peticionaria) presentó una demanda[2] sobre cobro de dinero e incumplimiento de contrato en contra de Guaynabo South

---

[1] La Orden mediante la cual se eliminaron las alegaciones de Medina fue emitida el 23 de julio de 2025 y notificada al día siguiente.
[2] Civil Núm.: SJ2023CV11440. Véase, Entrada Núm. 1 de SUMAC-TPI.

Construction (GSC o parte recurrida)[3].  El 26 de marzo de 2024, GSC presentó una *Moción Solicitando Exposición Más Definida[4]* y Medina presentó una *Demanda Enmendada[5]* el 29 de abril de 2024. En síntesis, Medina alegó que GSC la contrató para realizar labores de limpieza en varios proyectos de la parte recurrida mediante un contrato suscrito el 16 de enero de 2019, por la cantidad de $485,345.23. Medina indicó que concluyó las labores de limpieza para junio de 2019 y que GSC le adeudaba la suma de $113,586.79[6]. Añadió que le requirió a GSC el pago de las cantidades por escrito, personalmente y mediante facturas de cobro y que dichas gestiones resultaron infructuosas. Por lo anterior, le solicitó al TPI declararse con lugar la demanda y ordenara a GSC el pago de las cuantías reclamadas.

El 11 de junio de 2024, GSC presentó una *Contestación a Demanda Enmendada[7]*. En esencia, negó las alegaciones en su contra y presentó varias defensas afirmativas. En síntesis, alegó que cumplió sus obligaciones contractuales y legales en cuanto a Medina, por lo que nada le adeudaba. Al día siguiente, el TPI emitió una orden en la que señaló una vista sobre el estado de los procedimientos para el 18 de septiembre de 2024 mediante videoconferencia. El 15 de agosto de 2024, Medina informó al TPI que le cursó a GSC un requerimiento de admisiones.[8]

Llegado el día de la vista, no compareció Medina ni su representación legal. El TPI reseñaló la vista para el 8 de octubre de 2024 y ordenó al representante legal de Medina, el Lcdo. Luis Ramón Rodríguez Cintrón (licenciado Rodríguez Cintrón), mostrar causa

---

[3] A solicitud de GSC, el 11 de marzo de 2024, el TPI ordenó el traslado del pleito al Tribunal de Primera Instancia, Sala de Bayamón.[3]
[4] Entrada Núm. 14 de SUMAC-TPI.
[5] Entrada Núm. 16 de SUMAC-TPI.
[6] Según expuesto por Medina Group, el contrato tenía un "retenido $48,524.54, en adición a la cantidad de $16,213.00 de un cambio de orden de dicho contrato para el 30 de mayo de 2016, para un total de $63,737.54 adeudados por GSC a Medina Group.
[7] Entrada Núm. 18 SUMAC-TPI.
[8] Entrada Núm. 21 SUMAC TPI.

por la cual no se le debían imponer sanciones por su incomparecencia[9]. Al día siguiente, el licenciado Rodríguez Cintrón presentó una *Moción en Cumplimiento de Orden y Solicitud de Turno Posterior[10],* en la cual alegó que, por error involuntario, no solicitó la transferencia de la vista del 18 de septiembre de 2024, pues tenía una vista de juicio en su fondo previamente señalada en otro caso. Además, solicitó un turno posterior para la vista del 8 de octubre de 2024 por tener un señalamiento previo en otro caso. El TPI concedió el turno posterior para las 2:00 pm.

El 8 de octubre de 2024, se celebró la vista sobre estado de los procedimientos. En esta, las partes plantearon los asuntos pendientes en torno al descubrimiento de prueba. Luego de escuchar los planteamientos de las partes, el TPI determinó que el descubrimiento de prueba terminaría el 12 de febrero de 2025 y señaló la conferencia con antelación a juicio para el 14 de abril de 2025.[11]

El 3 de marzo de 2025, GSC presentó una *Moción Solicitando Orden[12],* en la que alegó que le cursó a Medina un pliego de descubrimiento de solo ocho (8) requerimientos y que Medina no presentó objeciones ni contestaciones a estos. En vista de lo anterior, GSC indicó que, en cumplimiento con la Regla 34.1 de Procedimiento Civil, le cursó una comunicación al licenciado Rodríguez Cintrón para que le remitiera las contestaciones en o antes del 28 de febrero de 2025[13]. Sin embargo, Medina no contestó su mensaje ni proveyó las respuestas requeridas. Por lo anterior, GSC le solicitó al TPI una orden a los efectos de ordenar a Medina, so pena de sanciones, a proveer los documentos solicitados en un

---

[9] Entrada Núm. 23 SUMAC-TPI.
[10] Entrada Núm. 23 SUMAC-TPI.
[11] Véase, *Minuta* de la vista del 8 de octubre de 2024, Entrada Núm. 28 SUMAC-TPI.
[12] Entrada Núm. 30 SUMAC-TPI.
[13]*Íd.,* Anejo A.

término perentorio y que le impusiera las costas y honorarios razonables correspondientes a su solicitud, así como se le notificara directamente a Medina, copia de la orden solicitada. El TPI emitió orden concediendo un término de diez (10) días a Medina para presentar su posición. Dicha orden se le notificó al licenciado Rodríguez Cintrón. Medina no presentó su posición a lo ordenado por el foro primario.

El 18 de marzo de 2025, GSC presentó *Moción Solicitando Orden por Reiterado Incumplimiento con el Descubrimiento de Prueba*[14]. En lo aquí pertinente, GSC alegó que el 20 de enero de 2025, le cursó una comunicación a Medina en la que, además de cursar un pliego de descubrimiento, le solicitó fechas disponibles para tomarle una deposición al Sr. Jonás Medina (señor Medina), principal ejecutivo de Medina Group LLC. Indicó que, de las fechas sugeridas, el licenciado Rodríguez Cintrón escogió el 5 de marzo de 2025, en horas de la tarde. GSC indicó que, llegado el día para la deposición, Medina y su representante legal no comparecieron y tampoco excusaron su incomparecencia. Añadió, además, que Medina no cumplió con presentar su posición sobre la primera moción de incumplimiento con el descubrimiento de prueba. Por ello, GSC solicitó que se le ordenara a Medina responder el pliego de descubrimiento que le fue cursado, y producir al señor Medina para la toma de deposición, so pena de sanciones y/o eliminación de las alegaciones, así como el pago de las costas y honorarios relacionados con la presentación de su solicitud. Por último, solicitó se le notificara la orden directamente a Medina. El 18 de marzo de 2025 y notificada el 20 del mismo mes y año, el foro recurrido emitió la siguiente *Orden*:

Coordine fecha para la toma de deposición.

---

[14] Entrada Núm. 32 de SUMAC-TPI.

Exponga además las razones por las cuales no se le deba imponer el pago de costas y honorarios de abogados[,] así como el pago de los gastos relacionados con la factura de taquígrafos.

La aludida orden fue notificada al licenciado Rodríguez Cintrón.

Así las cosas, el 24 de marzo de 2025, Medina presentó una *Moción en Cumplimiento de Orden*[15], en la que informó que había sometido el juramento del interrogatorio ese mismo día. Alegó que la prueba documental requerida por GSC ya estaba en posesión de ésta desde el 5 de agosto de 2024, pues junto con dicha prueba le había cursado a GSC un requerimiento de admisiones. En cuanto a la toma de deposición del 5 de marzo de 2025, planteó que se comunicaron con la oficina del Lcdo. Carlos A. Lázaro Castro (licenciado Lázaro Castro) para informar que el Sr. Medina estaba enfermo y no había podido completar la firma del interrogatorio y tampoco podía comparecer a la toma de deposición. A su vez, Medina presentó un escrito al expediente judicial en el que informaba haber enviado a GSC la contestación al interrogatorio[16]. El TPI ordenó a GSC expresar su posición ante lo alegado por Medina[17].

El 31 de marzo de 2025, GSC presentó *Moción en Cumplimiento de Orden*[18], en la que reseñó el patrón de incumplimiento de Medina con el descubrimiento de prueba. En específico, GSC expuso que Medina no contestó adecuadamente el interrogatorio cursado y solicitó al TPI que este se diera por no contestado. Respecto a la deposición que no pudo llevarse a cabo, GSC argumentó que lo alegado por Medina no guardaba relación con la verdad, pues el licenciado Lázaro Castro estuvo todo el día en su oficina en preparación para la referida deposición. A tales efectos,

---

[15] Entrada Núm. 34 de SUMAC-TPI.
[16] Entrada Núm. 35 de SUMAC-TPI.
[17] Entrada Núm. 36 de SUMAC-TPI.
[18] Entrada Núm. 37 de SUMAC-TPI.

acompañó una declaración jurada haciendo constar que estuvo en su oficina todo el día en preparación para la deposición y que no se recibió llamada alguna solicitando suspensión de la deposición por enfermedad del señor Medina. Por ello, solicitó al TPI que ordenara a Medina contestar cabalmente el interrogatorio cursado, a que compareciera a la deposición y se le impusiera el pago de costas y honorarios ante su reiterado incumplimiento en contestar los interrogatorios, además de los gastos de taquígrafo y el apercibimiento de eliminarle las alegaciones.

De otra parte, el 14 de abril de 2025, GSC presentó una *Moción Informativa*[19] en la que expuso que las partes habían acordado la toma de deposición para el 17 de abril de 2025[20]. No obstante, alegó que por dicho día ser feriado, GSC informó que acordaron la fecha de deposición para el 24 de abril de 2025 en horas de la mañana, fecha hábil para Medina.

El día de la deposición— el 24 de abril de 2025 a la 1:50 pm— GSC presentó *Tercera Moción Solicitando Orden por Reiterado Incumplimiento con el Descubrimiento de Prueba*[21]. En esta, esbozó nuevamente el tracto procesal e incumplimientos de Medina con el descubrimiento de prueba, incluyendo la deposición acordada por las partes a celebrarse durante la mañana de ese día. Señaló que la deposición no pudo celebrarse ante la incomparecencia de Medina y su abogado, quienes, por segunda vez, no se personaron ni excusaron su incomparecencia[22]. GSC acompañó copia del correo electrónico cursado el 16 de abril de 2025 por personal de la oficina del licenciado Rodríguez Cintrón, en el que, bajo instrucciones de éste, confirmaban su disponibilidad para la deposición. También acompañó la factura del taquígrafo. Por ello, solicitó al TPI la

---

[19] Entrada Núm. 38. de SUMAC-TPI.
[20] Jueves Santo.
[21] Entrada Núm. 39 de SUMAC-TPI.
[22] *Íd.*, Anejo A y B, respectivamente.

imposición de costas y honorarios de abogado relacionados a la deposición y a las tres solicitudes de orden sobre el descubrimiento de prueba, así como los gastos de taquígrafo. Por último, solicitaron la eliminación de las alegaciones de Medina. El TPI señaló vista para el 28 de abril de 2025 para discutir lo alegado por GSC y si procedía la imposición de sanciones. La orden fue notificada al licenciado Rodríguez Cintrón.

Conforme surge de la Minuta[23] de la vista del 28 de abril de 2025, el TPI, luego de escuchar los argumentos del licenciado Rodríguez Cintrón, en cuanto a la deposición del 5 de marzo de 2025, determinó no imponerle sanciones respecto a dicha incomparecencia. No obstante, en cuanto a la deposición del 24 de abril de 2025, el TPI le impuso a Medina el pago de una sanción por $286.00. Las partes acordaron en corte abierta la fecha del 19 de junio de 2025 para la deposición. En vista de lo anterior, el TPI estableció que, luego de celebrada la deposición, las partes tenían hasta el 21 de julio de 2025 para informar cualquier descubrimiento de prueba adicional, así como el plan de trabajo. De otro modo, las partes tenían hasta el 12 de septiembre de 2025 para presentar mociones dispositivas. El TPI señaló vista para el 23 de octubre de 2025.

El 25 de junio de 2025, GSC presentó una *Cuarta Moción sobre Incumplimiento con el Descubrimiento,* en el que nuevamente detalló el patrón de incumplimientos de Medina. En específico, GSC arguyó que, por tercera vez, ni Medina ni su representante legal, acudieron a la deposición pautada para el 19 de junio de 2025. A su escrito, acompañó como anejos un *Acta de Incomparecencia* de la deposición y la factura del taquígrafo[24]. Enfatizó que, Medina, como demandante del presente caso, es quien tiene el peso de la prueba

---

[23] Entrada Núm. 41 de SUMAC-TPI.
[24] *Íd.*, Anejo A y B.

y, además, debía ser diligente en la tramitación de su caso. Señaló que, a un año y medio de la presentación de la demanda, Medina continuaba evadiendo sus obligaciones con el descubrimiento de prueba. Al respecto detalló que, de diez (10) interrogatorios cursados, Medina contestó nueve (9) de forma evasiva y/o incompleta. Además, indicó que Medina no compareció a ninguna de las tres fechas pautadas para la deposición. En ese sentido, enfatizó que la fecha de la deposición del 19 de junio de 2025 fue calendarizada en corte abierta con el Tribunal, y que dicha fecha fue el punto de partida para que el foro recurrido delimitara el calendario de los asuntos del caso. Por ello, GSC argumentó que procedía que se le eliminaran las alegaciones a Medina y se desestimara la demanda.

El 30 de junio de 2025, notificada el 1 de julio de 2025, el TPI emitió la siguiente *Orden*[25]:

> Tiene 5 días el demandante para exponer las razones por las cuales no se deb[e]n eliminar las alegaciones y desestimar su demanda.
>
> **Se ordena notificar al demandante Medina Group LLC de la presente orden.[26]**

La orden fue notificada directamente a Medina y al licenciado Rodríguez Cintrón. Ese mismo día, Medina presentó *Moción Informativa* en la que informó que, cuando coordinó en corte abierta la toma de deposición para el 19 de junio de 2025, por error e inadvertencia, no se había percatado que dicho día era feriado. Al respecto, planteó que en los años que lleva en la práctica nunca ha trabajado los días feriados. Reconoció su error de no haberse comunicado el día antes con el licenciado Lázaro Castro, pero añadió que el compañero abogado tampoco se comunicó con él para confirmar la deposición. Por ello, propuso fechas adicionales para el

---

[25] Entrada núm. 50 de SUMAC-TPI.
[26] Negritas en el original.

mes de julio para recalendarizar la deposición. Por último, rechazó que las contestaciones a los interrogatorios fueran incompletas o evasivas y reiteró que su representado sí tenía interés en tramitar su caso.

En respuesta, GSC presentó *Replica a Moción Informativa*[27]. En síntesis, alegó que, si bien el licenciado Rodríguez Cintrón tenía como política personal no trabajar los días feriados, este bien pudo coordinar y recalendarizar la toma de deposición en cualquier momento entre las fechas del 28 de abril al 14 de julio de 2025, y no presentar un escrito informativo con posterioridad a la fecha de la deposición. Por ello, solicitó se le eliminaran las alegaciones a Medina y se desestimara la demanda en su contra. El 7 de julio de 2025, el TPI emitió la siguiente *Orden*:

> Se imponen sanciones de $500.00 por la ausencia a la deposición más el pago de los gastos incurridos en la deposición que no se pudo efectuar.
>
> **Se advierte que la próxima cancelación o incumplimiento del demandante conllevará la eliminación de las alegaciones.**
>
> **Se ordena notificar de esta orden al dem[an]dante.[28]**

Esta orden se notificó directamente a Medina y a su representante legal. Así las cosas, el 23 de julio de 2025, GSC presentó *Moción Solicitando la Eliminación de las Alegaciones*[29]. En lo aquí pertinente, señaló que, vía correo electrónico, las partes acordaron la toma de deposición del señor Medina para el 24 de julio de 2025. Sin embargo, luego de coordinada la deposición, el licenciado Rodríguez Cintrón se comunicó para informar que el señor Medina se iba de viaje el 23 de julio de 2025, por lo que no estaría disponible para la deposición. GSC expuso que Medina sugirió adelantar la deposición para el 18 de julio de 2025 en horas

---

[27] Entrada Núm. 51 de SUMAC-TPI.
[28] Entrada Núm. 52 de SUMAC-TPI (Énfasis nuestro).
[29] Entrada Núm. 56 de SUMAC-TPI.

de la tarde. GSC indicó que dicha fecha no era hábil y además era insuficiente, pues necesitaban un día completo para deponer al señor Medina. Además, enfatizó que se ha tratado de tomar deposición al señor Medina en cuatro ocasiones, a saber, el 5 de marzo de 2025, 24 de abril de 2025, 19 de junio de 2025 y 24 de julio de 2025, siendo todas estas canceladas por causa de los incumplimientos de Medina. Por ello, solicitó al TPI la eliminación de las alegaciones y desestimación de la demanda.

Ese mismo día, el TPI emitió la *Orden*[30] recurrida, la cual se transcribe a continuación:

> Conforme al comportamiento del demandante y su continuo incumplimiento que ha llevado a la cancelación de deposición en el descubrimiento de prueba **SE ELIMINAN LAS ALEGACIONES** del demandante.

Inconforme, Medina presentó una *Moción de Reconsideración*[31], en la que, entre otros asuntos, solicitó se extendiera el descubrimiento de prueba hasta el 30 de septiembre de 2025. El 27 de julio de 2025, GSC presentó *Oposición a Solicitud de Reconsideración y Solicitud para que se Dicte Sentencia*[32]. Medina presentó *Replica a Oposición a Reconsideración*[33]. El 8 de agosto de 2025, notificada ese mismo día, el TPI declaró No Ha Lugar la reconsideración.

Insatisfecho con el dictamen, Medina acude ante este foro apelativo mediante recurso de *certiorari* y formuló el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA DE BAYAMÓN AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN TODA VEZ QUE ABUSÓ DE SU DISCRECIÓN, HABIENDO EL DEMANDANTE-PETICIONARIO EVIDENCIADO LAS GESTIONES REALIZADAS PARA LA TOMA DE DEPOSICIÓN, ESTO PRIVANDO AL DEMANDANTE DE SU DÍA EN CORTE Y LA DRÁSTICA RESOLUCIÓN DE ELIMINARLE LAS ALEGACIONES A LA PARTE DEMANDANTE-PETICIONARIA

---

[30] Entrada Núm. 57 de SUMAC-TPI. (Mayúsculas y negritas en el original).
[31] Entrada Núm. 58 DE SUMAC-TPI.
[32] Entrada Núm. 60 de SUMAC-TPI
[33] Entrada Núm. 61 de SUMAC-TPI.

CUANDO FUE DEMANDADO-PETICIONADO QUIEN NO CONTESTÓ LAS MISMAS Y SE NEGÓ A TOMAR LA DEPOSICIÓN ANTES DEL 24 DE JULIO DE 2025.

## II.

### A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[34]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[35] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de

---

[34] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[35] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

conformidad con la Regla 52.1, *supra,* para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[36], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra,* enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari,* mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[37]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[38] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de

---

[36] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 62, 215 DPR __ (2025).
[37] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[38] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[39] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[40]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[41] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[42] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[43]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[44]

---

[39] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* supra, pág. 155.

[40] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

[41] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 657–658 (1997).

[42] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular,* supra.

[43] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra, pág. 658.

[44] *SLG ZapataRivera v. J.F. Montalvo,* supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

## C.

La Regla 34.3(b)(3) de Procedimiento Civil dispone, en lo pertinente, lo siguiente:

> Si una parte . . . deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba . . . el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:
>
> [...]
>
> (3) Una orden para **eliminar alegaciones** o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.
>
> [...]
>
> (6) Una orden, bajo las condiciones que estime justas, para imponer a cualquier parte, testigo, abogado o abogada una **sanción económica** como resultado de sus actuaciones.[45]

Además, y en lo aquí pertinente, la Regla 34.5 de Procedimiento Civil dispone que si una parte deja de comparecer ante la persona ante quien se ha de tomar su deposición después de haber sido debidamente notificada, o deja de presentar contestaciones u objeciones a los interrogatorios sometidos conforme la Regla 30 de Procedimiento Civil, el tribunal podrá, a solicitud de parte, tomar cualquier acción de las autorizadas en las cláusulas (1), (2) y (3) del inciso (b) de la Regla 34.3 antes citada[46].

De tal forma, los foros judiciales tienen la facultad de imponer sanciones económicas y sanciones drásticas, como lo es la eliminación de las alegaciones de una parte, cuando esta incumpla con los parámetros de un descubrimiento de prueba. *HRS Erase v. CMT*, 205 DPR 689, 700 (2020).

En el citado caso de *HRS Erase,* el Tribunal Supremo repasó la jurisprudencia en torno a las medidas progresivas que exige la

---

[45] 32 LPRA Ap. V, R. 34.3(b)(3). (Énfasis nuestro).
[46] 32 LPRA Ap. V, R. 34.5.

Regla 34.3(b)(3) a ser impuestas previo a recurrir a la sanción de la desestimación. En primer lugar, destacó que tales sanciones exigen un apercibimiento previo a la parte. Al respecto, mencionó las expresiones realizadas en *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823 (1962), en los siguientes términos:

> La desestimación de un pleito sin ir a sus méritos como un medio de sanción, debe ser de los últimos recursos a utilizarse después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, **no debería procederse a ella sin un previo apercibimiento**.

*Id.,* págs. 829-830. (Énfasis nuestro).

Cónsono con ello, el Tribunal Supremo aludió que en *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494 (1982), al interpretar el alcance de las sanciones que podía imponer un tribunal según la derogada Regla 34.2 de Procedimiento Civil de 1979 (32 LPRA Ap. III) – equivalente a la actual Regla 34.3 de Procedimiento Civil de 2009 (32 LPRA Ap. V) – determinó que las sanciones drásticas de la desestimación o la eliminación de las alegaciones no procederían, hasta tanto se le apercibiera directamente a la parte sobre los incumplimientos de su representación legal y de las consecuencias de ello. En específico, en *Maldonado,* el Alto Foro puntualizó que:

> Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, **tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida**. (...) **Una parte que haya sido informada y apercibida de [la] situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.**

*Id.*, pág. 498. (Énfasis nuestro).

Por tanto, no se puede desestimar un caso o eliminar las alegaciones de una parte ante un primer incumplimiento con las órdenes del tribunal. En cambio, para que tal orden fuese justa, primeramente, el tribunal debe notificar y apercibir al abogado de su incumplimiento. Si la representación legal persiste en su incumplimiento, el tribunal deberá notificar directamente a la parte afectada de la situación y apercibirle de las consecuencias de ello. Una vez la parte advenga en conocimiento del trámite procesal de su causa de acción, el tribunal estará facultado para imponer la severa sanción de la desestimación o la eliminación de las alegaciones. *HRS Erase v. CMT*, supra, pág. 702.

En *HRS Erase,* el Tribunal Supremo añadió que otra disposición que faculta a los tribunales para desestimar causas de acción debido al incumplimiento de las partes con sus órdenes es la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2. De acuerdo con esta Regla, el tribunal estará obligado a notificar directamente a la parte sobre el incumplimiento de su representación legal, indistintamente de qué parte se trate, sea demandante o demandada. Luego de apercibir propiamente a la parte en torno a las consecuencias de un incumplimiento repetido, el tribunal podrá imponer las sanciones de la desestimación o la eliminación de las alegaciones. *HRS Erase v. CMT*, supra, págs. 705-706. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca tal término. Regla 39.2(a) de Procedimiento Civil, *supra.*

Al final, el Tribunal reconoció que la Regla 34.3(b)(3), *supra,* de Procedimiento Civil resulta similar a la Regla 39.2(a), *supra,* puesto que ambas exigen que, previo a la imposición de una sanción como la eliminación de las alegaciones, se notifique y aperciba

directamente a la parte de la situación procesal del caso. *Id.,* págs. 707-708.

En resumen, no hay duda de que, al amparo de las Reglas de Procedimiento Civil, los tribunales tienen el poder discrecional de desestimar una demanda o eliminar las alegaciones de una parte. Ese proceder, sin embargo, se debe ejercer juiciosa y apropiadamente. *Maldonado v. Srio de Rec. Naturales,* supra, pág. 498. Así que, en primer término, el tribunal debe apercibirle al abogado de la parte su incumplimiento y concederle la oportunidad para responder. Si el abogado no responde a tal apercibimiento, el tribunal procederá a imponerle sanciones al abogado y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido informada de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación de la demanda o la eliminación de las alegaciones.

**III.**

En su único señalamiento de error, Medina sostiene que el foro primario incidió al eliminarle las alegaciones. Lo anterior, porque entiende que cumplió con evidenciar las gestiones realizadas para la toma de deposición, y que fue la parte demandada quien se negó a tomar la deposición antes del 24 de julio de 2025. La controversia ante nuestra consideración se reduce a determinar si, examinado el trámite procesal del presente caso, procedía la eliminación de las alegaciones de la parte apelante. Veamos.

Según surge del trámite procesal, Medina instó la demanda del presente caso el 11 de diciembre de 2023. Del expediente ante nuestra consideración, se desprende con claridad desde las etapas iniciales del caso, el patrón de incumplimiento de Medina. En lo aquí pertinente, surge un reiterado incumplimiento en cuanto a la toma

de deposición del Sr. Jonás Medina, principal ejecutivo de Medina Group LLC.

Ante el primer incumplimiento con el descubrimiento de prueba, GSC, según lo establecido en la Regla 34.1 de Procedimiento Civil, hizo esfuerzos directamente con Medina, los cuales resultaron infructuosos. Posteriormente, GSC acudió al tribunal y, ante las solicitudes presentadas, el TPI señaló vista para resolver las controversias sobre los asuntos pendientes del descubrimiento de prueba. También, el foro primario emitió varias órdenes dirigidas a Medina para que cumpliera con el descubrimiento de prueba. En dichas órdenes, el TPI le concedió a Medina oportunidad para expresarse en torno a las alegaciones de GSC.

Sin embargo, en más de una ocasión, Medina no presentó su posición conforme le fuera ordenado por el TPI. Aun así, en las ocasiones que sí lo hizo, lo cierto es, que las excusas brindadas por Medina en sus escritos resultan insuficientes para justificar la dejadez de su caso. Su desidia y patrón de incumplimiento en el caso, el cual fue presentado desde diciembre de 2023, ha tenido el efecto de que aún hoy este se encuentra en etapa de descubrimiento de prueba por causas atribuibles únicamente al demandante. Además, las órdenes emitidas subsiguientemente por el foro recurrido apercibían a Medina sobre la posibilidad de imponerle sanciones, eliminar sus alegaciones e incluso desestimar la demanda.

El foro recurrido, en efecto, le impuso sanciones en más de una ocasión a Medina, y aun así este no corrigió su curso de acción en cuanto al descubrimiento de prueba. Además, tanto la orden del 30 de junio de 2025 como la del 7 de julio de 2025, las cuales apercibían sobre la eliminación de alegaciones, fueron notificadas directamente a Medina. No obstante, y a pesar de las oportunidades concedidas, Medina continuó en reiterado incumplimiento.

En vista de lo anterior, concluimos que el TPI observó la normativa jurídica que requiere la imposición de sanciones de forma progresiva hasta llegar a la eliminación de las alegaciones. Así, el TPI primero apercibió al abogado de Medina de su incumplimiento y le brindó oportunidad para responder. Luego, impuso una sanción económica por su incomparecencia a la deposición del 24 de abril de 2025. Posteriormente, el TPI le apercibió sobre la posibilidad de eliminar las alegaciones y notificó directamente a Medina sobre la situación. Lo anterior, no generó resultados y el TPI procedió a eliminar las alegaciones a Medina, luego de que dicha parte fuera debidamente informada y apercibida de la situación y posibles consecuencias.

En fin, los autos revelan que no se trata de un primer incumplimiento. Bajo las circunstancias particulares de este caso, y en atención a los procedimientos acaecidos en el pleito, concluimos que, tanto Medina como su abogado, no justificaron satisfactoriamente la desatención a las órdenes emitidas por el TPI. Por ello, Medina no puede alegar que se le privó de su día en corte, mucho menos alegar que la determinación del foro recurrido de eliminarle las alegaciones fue una sanción drástica, pues del expediente surge diáfanamente su reiterado incumplimiento.

A la luz de lo anterior, concluimos, que el TPI actuó correctamente al eliminar las alegaciones de la parte apelante, por lo que procede expedir el auto de *certiorari* y confirmar la orden recurrida.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se confirma la orden recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones